Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| GRETCHEN MARÍA CAPÓ HERNÁNDEZ<br><br>*Peticionaria*<br><br>v.<br><br>WILLIAM GABRIEL CARRIÓN ROQUE<br><br>*Recurrido* | TA2026CE00582 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Municipal de San Juan<br><br>Caso Núm.: SJ2026MU02091<br><br>Sobre: Ley para la Prevención e Intervención con la Violencia Doméstica-Órdenes de Protección |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a <u>26</u> de junio de 2026.

Comparece ante nos la señora Gretchen María Capó Hernández (señora Capó Hernández o peticionaria) mediante recurso de *Certiorari* y solicita que revoquemos la *Resolución Denegando Orden de Protección*[1] emitida y notificada el 13 de abril de 2026 por el Tribunal de Primera Instancia, Sala Municipal de San Juan (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Petición de Orden de Protección*[2] presentada por la peticionaria.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

**I.**

El caso de autos tuvo su génesis el 23 de febrero de 2026, cuando la señora Capó Hernández presentó una *Petición de Orden de Protección* al amparo de la Ley Núm. 54, *infra.* Allí alegó actos

---

[1] Apéndice 2 del recurso de *Certiorari*.
[2] Apéndice 1 del recurso de *Certiorari*.

constitutivos de maltrato emocional y psicológico, intimidación y amenazas por parte del señor William Gabriel Carrión Roque (señor Carrión Roque o recurrido).

Ese mismo día se celebró una vista ex parte, en la cual la peticionaria identificó al señor Carrión Roque como su exesposo[3]. Manifestó que estuvo casada con el recurrido alrededor de diez (10) años y que se divorciaron en enero de 2026[4]. Asimismo, esbozó que aparte del divorcio, existían controversias judiciales pendientes relacionadas con la custodia de los menores, pensión alimentaria y bienes gananciales[5]. Informó que durante el matrimonio procrearon dos hijos menores de edad, de ocho (8) y cuatro (4) años, respectivamente[6]. Indicó, además, que el señor Carrión Roque no usaba sustancias controladas ni padecía alguna condición mental, pero poseía armas de fuego por razones de seguridad. Expresó que comparecía al foro recurrido porque sentía un temor real por su seguridad y la de sus hijos, y que llevaba mucho tiempo sintiéndose intimidada y amenazada por éste[7].

El TPI le requirió a la señora Capó Hernández que especificara los hechos que sustentaban su solicitud. Por lo cual, declaró que lo último que había sucedido fue que un empleado de la compañía Solar Now, negocio que forma parte de los bienes gananciales de las partes, acudió a informarle que había escuchado al recurrido expresar frente a otros empleados que si tenía que dividir el negocio y una colección de relojes valorada en aproximadamente un millón de dólares ($1,000,000.00) con ésta, prefería mandarla a matar[8].

La peticionaria testificó que dicha información le fue proporcionada el jueves anterior a la vista, pero no quiso proveer el

---

[3] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 5, líneas 7-9.
[4] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 5, líneas 10-13.
[5] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 5, líneas 14-16.
[6] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 5, líneas 19-22.
[7] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 6, líneas 1-11.
[8] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 6, líneas 12-21.

nombre del empleado porque alegadamente éste tenía miedo a represalias[9]. Señaló que, desde entonces, no podía dormir ni salir de su hogar, debido al miedo que sentía por ella y por sus hijos[10]. Añadió que, previo al divorcio, el recurrido constantemente la amenazaba con quitarle a sus hijos, dejarla en la calle y privarla de cualquier participación en el negocio familiar si ésta decidía divorciarse[11]. De igual forma, adujo que el señor Carrión Roque le manifestó en ocasiones que tenía los recursos y el poder para internarla en la institución Capestrano[12].

Así pues, la señora Capó Hernández describió múltiples conductas de control tecnológico y vigilancia. Declaró que el recurrido mantenía acceso y control sobre la cuenta principal de su vehículo Tesla, lo que le permitía conocer su ubicación, prender o apagar el vehículo y monitorear sus movimientos[13].

En el transcurso del interrogatorio, la peticionaria sostuvo que el recurrido frecuentemente la amenazaba con llamar a la policía por incidentes triviales relacionados con los menores, lo cual incluye situaciones en donde ésta llegaba pocos minutos tarde a la entrega de los niños[14].

Indicó también, que éste retenía control sobre el sistema de internet y wifi del hogar, al poder cambiar contraseñas, prender o apagar sistemas y supervisar el acceso de terceros, aun después del divorcio y pese a órdenes judiciales relacionadas con remedios provisionales[15]. Además, relató que el señor Carrión Roque aparecía inesperadamente en lugares donde ella se encontraba[16]. Específicamente, narró un incidente ocurrido en una cita psicológica

---

[9] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 7, líneas 2-7.
[10] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 7, línea 11.
[11] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 7, líneas 14-19.
[12] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 7, líneas 19-21.
[13] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 8, líneas 1-5.
[14] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 9, líneas 1-2.
[15] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 9, líneas 2-5.
[16] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 9, líneas 11-14.

relacionada con los menores, donde el recurrido se presentó sin previo aviso, pese a que no le correspondía estar allí, situación que la hizo sentir incómoda y perturbada[17].

El TPI también indagó sobre querellas previas. Por ello, la señora Capó Hernández explicó que había acudido a la Policía y que, incluso, el testigo relacionado con la alegada amenaza había comparecido, pero la Fiscalía determinó no radicar cargos criminales por entender que no existían elementos suficientes[18].

Culminada la vista, el TPI realizó las siguientes determinaciones de hechos:

> Evaluada la petición y la prueba presentada, el Tribunal concluye que hay motivos suficientes para expedir esta orden de protección a favor de Gretchen María Capó Hernández de 41 años, por las siguientes manifestaciones de maltrato o negligencia:
>
> - emocional o psicológico
> - intimidación
> - amenazas
>
> Además, el Tribunal establece los siguientes hechos:
>
> Las partes estuvieron casadas por casi 10 años, se divorciaron en enero de 2026, aunque están separados desde marzo de 2025. Procrearon dos hijos de 8 y 4 años. Existen casos pendientes de custodia, bienes gananciales y pensión. El peticionado porta armas de fuego. Las partes tiene una compañía y uno de los empleados de la compañía indicó que si le toca dividir el negocio y los relojes preferiría mandarla a matar porque la peticionaria no vale 4 millones. El peticionado la amenazado con ponerla en Capestrano, con quitarle a los niños, con dejarla en la calle. El peticionado tiene la ubicación del Tesla. El peticionado le decía vagabunda, parásito. La amenaza con llamar a la policía cuando la peticionaria. El peticionado tiene acceso al sistema de wifi. El peticionado aparece sin previo aviso al hogar y a la cita de la peticionaria. Se presentó una querella, pero la fiscal María Terraza instruyó no presentar cargos. La intercesora legal discutió el plan de acción con la peticionaria[19].

Conforme a lo anterior, el TPI dispuso que existía una probabilidad sustancial de riesgo inmediato de maltrato y expidió la *Orden de Protección Ex Parte*[20] así como la correspondiente

---

[17] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 9, líneas 14-20.
[18] Véase, Apéndice 39 del recurso de *Certiorari*, pág. 10, líneas 4-7.
[19] Apéndice 3 del recurso de *Certiorari*, págs. 1-5.
[20] *Íd.*

*Certificación de Orden de Protección*[21] con vigencia desde el 23 de febrero de 2026 hasta el 27 de marzo de 2026. Así pues, impuso múltiples restricciones personales, patrimoniales y tecnológicas sobre el recurrido, lo cual incluyó la suspensión provisional de relaciones filiales y la entrega de armas de fuego. Además, se consignó la citación a vista final para el 27 de marzo de 2026. Las partes quedaron debidamente advertidas sobre las consecuencias de no comparecer a la vista y/o incumplir los términos de la orden.

Posteriormente, el 27 de marzo de 2026, el TPI emitió una *Orden de Protección Ex Parte Enmendada*[22], la cual estaría vigente desde el 23 de febrero de 2026 hasta el 13 de abril de 2026. En el interín, el 10 de abril de 2026, la peticionaria presentó una *Moción Solicitando Citación de Personas Testigos para Vista de Orden de Protección*[23] dirigida a Ian Del Valle Morales y al Agente Antonio Pérez. Evaluado el petitorio, ese mismo día, el TPI emitió y notificó una *Orden*[24] en la que dispuso lo siguiente:

> No Ha Lugar. El Tribunal no citará a personas que no sean parte en el caso. La parte peticionaria puede llevar los testigos que entienda. Será discreción del Tribunal si esos testigos, adicionales a las partes, son imprescindibles para la adjudicación de la orden de protección final en este caso.

Llegada la fecha de expiración de la orden, se celebró una vista final evidenciaria en la cual comparecieron las partes. En la misma, el señor Carrión Roque arguyó que las alegaciones de la peticionaria eran esencialmente las mismas que habían sido discutidas y denegadas previamente en otros procedimientos judiciales. Adujo que la única alegación distinta era aquella relacionada con el testigo que alegadamente escuchó la amenaza de muerte[25]. Asimismo,

---

[21] *Íd.*, págs. 6-7.
[22] Véase la entrada núm. 43 del expediente del Tribunal de Primera Instancia (TPI). El acceso a dicha orden está limitado a las partes, sus respectivas representaciones legales y a los jueces.
[23] Apéndice 32 del recurso de *Certiorari*.
[24] Apéndice 33 del recurso de *Certiorari*.
[25] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 8, línea 22 y pág. 9, líneas 1-3.

enfatizó que el testigo nunca fue notificado ni traído al foro recurrido[26].

Por su parte, la peticionaria expresó que comparecía precisamente para recibir la protección que provee la Ley Núm. 54, *infra,* y que los procedimientos criminales posteriores fueron iniciados por el propio recurrido luego de presentada la solicitud de orden de protección[27]. Así pues, declaró que estuvo casada con el recurrido por aproximadamente once (11) años y que procrearon (2) dos hijos menores de edad, de (8) ocho y (4) cuatro años[28]. Indicó además que el divorcio se había finalizado en enero de 2026[29]. Al preguntársele la razón por la cual solicitaba la orden de protección, la peticionaria intentó explicar que el 12 de febrero de 2026, un empleado del recurrido comenzó a comunicarse con ella respecto a expresiones realizadas por el señor Carrión Roque[30]. Sin embargo, inmediatamente, la representación legal del recurrido objetó el testimonio por considerar que constituye prueba de referencia bajo las Reglas 801 y 802 de Evidencia. Dicha objeción fue declarada Ha Lugar[31].

En respuesta, la representante legal de la señora Capó Hernández argumentó que los procedimientos bajo la Ley Núm. 54 no debían ser evaluados con el rigor técnico absoluto de un proceso criminal ordinario y, enfatizó que, precisamente, la alegación relacionada con el empleado era la que daba base a la solicitud de protección[32]. Por su lado, el recurrido esbozó que el testigo nunca fue traído al Tribunal y que no podía admitirse prueba de referencia en sustitución de dicho testimonio[33]. No obstante, la peticionaria

---

[26] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 9, líneas 17-18.
[27] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 10, líneas 6-14.
[28] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 23, líneas 1-6.
[29] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 23, líneas 9-15.
[30] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 23, líneas 19-22.
[31] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 24, líneas 1-7.
[32] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 24, líneas 15-22 y pág. 25, líneas 1-9.
[33] Véase, Apéndice 40 del recurso de *Certiorari,* pág. 25, líneas 11-17.

adujo que sí había solicitado previamente la citación del referido testigo, pero dicha solicitud fue declarada No Ha Lugar por el Tribunal[34].

El foro recurrido puntualizó que la moción de citación ya había sido resuelta y reiteró que correspondía a las partes traer sus propios testigos, reservándose así la discreción sobre su admisión[35].

Así pues, la señora Capó Hernández declaró que solicitó la orden de protección el 23 de febrero de 2026 debido al miedo que sentía por su vida[36]. Al preguntársele específicamente a qué se refería con dicho miedo, expresó que había recibido amenazas de muerte relacionadas con la posibilidad de dividir el negocio y los bienes con el recurrido[37]. Nuevamente, el recurrido objetó el testimonio basado en la falta de conocimiento personal y prueba de referencia y el foro recurrido sostuvo varias de las objeciones[38].

La peticionaria añadió que el señor Carrión Roque le había prometido hacerle la vida imposible y expresó que poseía audios y mensajes de texto relacionados con dichas situaciones y manifestó sentirse ignorada por las autoridades hasta el punto de temer que nadie le haría caso hasta que le ocurriera algo fatal[39].

Concluido el testimonio de la peticionaria, el recurrido optó por no contrainterrogarla ni presentar prueba adicional, reservándose el derecho a solicitar la desestimación del caso conforme a la Regla 39.2 de las de Procedimiento Civil por alegada insuficiencia de prueba[40].

En su argumentación final, la señora Capó Hernández enfatizó que comparecía ante el TPI como una mujer que

---

[34] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 26, líneas 7-10.
[35] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 27, líneas 6-11.
[36] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 33, líneas 6-7.
[37] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 33, líneas 8-21.
[38] Véase, Apéndice 40 del recurso de *Certiorari*, pág. 34, líneas 1-22 y pág. 35, líneas 1-6.
[39] Véase, Apéndice 42 del recurso de *Certiorari*, pág. 42, líneas 10-20.
[40] Véase, Apéndice 42 del recurso de *Certiorari*, pág. 44, líneas 3-5.

genuinamente temía por su vida y que buscaba la protección del Estado[41]. Finalizada la presentación de prueba, el foro recurrido emitió una *Resolución Denegando Orden de Protección*, al concluir que no se probaron los elementos constitutivos de violencia doméstica conforme a la Ley Núm. 54, *infra*.

Inconforme con la determinación, el 9 de mayo de 2026, la peticionaria acudió ante este foro intermedio y le imputó al TPI los siguientes señalamientos de error:

> Primer Error: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la expedición de la orden de protección solicitada por la peticionaria, al concluir que no se probaron los elementos constitutivos de violencia doméstica, cuando la prueba presentada establecía un patrón de maltrato psicológico, intimidación y control coercitivo conforme a la Ley Núm. 54 de 1989.
>
> Segundo Error: Erró el Tribunal de Primera Instancia al fragmentar y minimizar la prueba presentada por la peticionaria, evaluando de manera aislada los incidentes relatados en lugar de analizarlos en su conjunto como parte de un patrón continuo de maltrato emocional o psicológico, según reconocido por la Ley Núm. 54.
>
> Tercer Error: Erró el Tribunal de Primera Instancia al aplicar un estándar probatorio más riguroso que el requerido por ley en torno a órdenes de protección en casos de violencia doméstica, al exigir evidencia equiparable a actos de violencia física o prueba directa de amenazas inmediatas, en contravención al reconocimiento estatutario del maltrato psicológico como modalidad autónoma de violencia doméstica.
>
> Cuarto Error: Erró el Tribunal de Primera Instancia al limitar indebidamente el derecho de la peticionaria a presentar prueba esencial, al declarar No Ha Lugar la moción de citación de testigos, privándola de la oportunidad de corroborar mediante testimonio directo hechos medulares de su reclamación.
>
> Quinto Error: Erró el Tribunal de Primera Instancia al incurrir en violación al debido proceso de ley en su vertiente procesal, al impedir que la peticionaria ejerciera plenamente su derecho a presentar prueba, a confrontar testigos y a desarrollar su caso en un procedimiento justo y equitativo.
>
> Sexto Error: Erró el Tribunal de Primera Instancia al incurrir en un error manifiesto en la apreciación de la prueba, al no dar el peso adecuado al testimonio creíble de la peticionaria, ni a las circunstancias que evidenciaban un ambiente de intimidación, vigilancia y control.
>
> Séptimo Error: Erró el Tribunal de Primera Instancia al no considerar adecuadamente el contexto de la relación entre las partes —incluyendo la ruptura reciente, disputas de custodia y controversias económicas— como factores que

---

[41] Véase, Apéndice 42 del recurso de *Certiorari*, pág. 44, líneas 10-16.

aumentan el riesgo de escalamiento de conductas constitutivas de violencia doméstica.

Octavo Error: Erró el Tribunal de Primera Instancia al no reconocer el valor probatorio de las manifestaciones de temor razonable de la peticionaria, ni su estado emocional como evidencia de daño psicológico conforme a la Ley Núm. 54.

Noveno Error: Erró el Tribunal de Primera Instancia al ejercer su discreción de manera arbitraria y en abuso de la misma, al denegar el remedio solicitado pese a la existencia de prueba suficiente para activar la protección del Estado bajo la Ley Núm. 54.

El 15 de mayo de 2026, emitimos y notificamos una *Resolución* en la cual le concedimos al recurrido diez (10) días para mostrar causa por la cual no se debía expedir el recurso presentado. En cumplimiento con lo anterior, el 18 de mayo de 2026, el señor Carrión Roque sometió su *Oposición a Expedición de Auto de Certiorari*. En la misma, arguyó que no procedía expedir el recurso solicitado, toda vez que el TPI actuó correctamente al celebrar la vista final, atender las objeciones evidenciarias y concluir que la peticionaria no presentó prueba admisible suficiente para justificar una orden de protección final. Argumentó que la alegada amenaza principal surgía de declaraciones de un tercero ausente, por lo que constituía prueba de referencia. Además, señaló que la señora Capó Hernández tuvo su debido proceso y una oportunidad plena de presentar su caso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[42]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada

---

[42] Véase, *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

dentro de la discreción judicial[43]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[44]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[45].

La Regla 40 del Reglamento del Tribunal de Apelaciones[46], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari*. La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso apropiado para solicitar la revisión de determinaciones

---

[43] *Íd.*

[44] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. De Justicia*, 154 DPR 79, 91 (2001).

[45] *Íd.*

[46] 4 LPRA XXII-B, R. 40.

postsentencia[47]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[48].

**-B-**

La Ley Núm. 54, conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica[49], constituye la piedra angular dentro del andamiaje legal para atender el problema de la violencia doméstica en Puerto Rico. A esos fines y como parte de la política pública establecida por el Gobierno de Puerto Rico, la ley decretó lo siguiente:

> El Gobierno de Puerto Rico reconoce que la violencia doméstica es uno de los problemas más graves y complejos que confronta nuestra sociedad. [...] En el desarrollo de la política sobre este asunto, debemos dar énfasis a atender las dificultades que las situaciones de violencia doméstica presentan para toda víctima, particularmente a mujeres y menores, para preservar su integridad física y emocional, procurar su seguridad y salvar sus vidas.
> [...]
> Como política pública, el Gobierno del Estado Libre Asociado de Puerto Rico repudia enérgicamente la violencia doméstica por ser contraria a los valores de paz, dignidad y respeto que este pueblo quiere mantener para los individuos, las familias y la comunidad general[50].

Así pues, con el propósito de garantizar la consecución de la política pública implantada, la ley provee como mecanismo de auxilio la orden de protección[51]. Esta medida representa una respuesta precisa a las situaciones de violencia doméstica[52], a la vez

---

[47] *IG Builders et al. v. BBVAPR, supra*, pág. 339.

[48] *Íd.*

[49] Ley Núm. 54 de 15 de agosto de 1989, 8 LPRA sec. 601 *et seq.*

[50] Véase la Exposición de Motivos de la Ley Núm. 54, *supra*, 8 LPRA sec. 601.

[51] La Ley define la orden de protección como "todo mandato expedido por escrito bajo el sello de un tribunal, en la cual se dictan las medidas a un agresor para que se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutivos de violencia doméstica". 8 LPRA sec. 602(i).

[52] La Ley 54 define violencia doméstica como un patrón de conducta constante de empleo de fuerza física o violencia psicológica, intimidación o persecución contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien

que sirve como medio preventivo de posibles sucesos violentos que pudieran ocurrir posteriormente. De modo que, cualquier persona víctima de violencia doméstica podrá radicar una petición en el tribunal y solicitar una orden de protección, sin que sea necesaria la presentación previa de una denuncia o acusación[53].

Después que una parte presente la petición de una orden de protección, el tribunal evaluará y considerará si de su faz la solicitud tiene algún mérito. En caso de haberlo, por pequeño que sea, el juzgador tendrá que citar a las partes para una vista, la que deberá celebrarse dentro de los siguientes cinco días. Una vez celebrada la vista, el tribunal deberá determinar si procede o no expedir la orden de protección[54]. Si el tribunal determina que existen motivos suficientes para creer que la parte peticionaria fue víctima de violencia doméstica, entonces deberá dictar la orden con las medidas que estime necesarias[55].

A su vez, el tribunal podrá conceder las órdenes de protección que requieran la comparecencia de ambas partes o una orden *ex parte* con carácter provisional[56].

Esta última constituye un esfuerzo adicional para proveer una protección preventiva, ya que permite que sea concedida sin la comparecencia de la parte peticionada. De esta forma, la orden de protección *ex parte* se alza como una medida preventiva ante la probabilidad de un riesgo inmediato o una situación de maltrato.

---

cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional. 8 LPRA sec. 602(q). También, define la violencia psicológica como un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor. 8 LPRA sec. 602(r).

[53] 8 LPRA sec. 621.

[54] 8 LPRA sec. 624.

[55] *Pizarro v. Nicot*, 151 DPR 944, 952-953 (2000).

[56] 8 LPRA secs. 621 y 625.

Después que un tribunal expida una orden de protección *ex parte*, la parte peticionada podrá presentar su oposición durante una vista en la que el tribunal podrá dejar sin efecto la orden o podrá extender sus efectos por el periodo que entienda necesario[57].

La persona contra la cual se expide una orden de protección al amparo de la Ley Núm. 54, tiene disponible el recurso de *certiorari* para solicitar su revisión ante el Tribunal de Apelaciones[58].

Cabe señalar que los jueces se deben asegurar que la expedición de la orden sea la solución más justa y efectiva para atender la situación de violencia que se le plantea. Si existe duda, después de considerar la totalidad de las circunstancias del caso, el juez debe inclinar la balanza a favor de la parte peticionaria. Solo debe denegar la orden si los hechos probados no justifican tal curso de acción.

**-C-**

En Puerto Rico, la revisión apelativa de las determinaciones de hechos del TPI está principalmente regulada por la Regla 42.2 de Procedimiento Civil de Puerto Rico[59]. En particular, la Regla citada dispone lo siguiente:

> [...] Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. [...]

Nuestra jurisprudencia ha establecido que los foros apelativos no debemos intervenir livianamente con las determinaciones hechas por el juzgador de instancia. Adviértase que es ante el tribunal primario que los testigos declaran y, por tanto, es ese foro el que tiene la oportunidad de observar y apreciar el comportamiento de los testigos mientras declaran *(demeanor)*[60]. Es por esto, que este

---

[57] 8 LPRA sec. 625.
[58] *Pizarro v. Nicot, supra*, pág. 956.
[59] 32 LPRA Ap. V, R. 42.2.
[60] *Ramos Acosta v. Caparra Dairy Inc.,* 113 DPR 357, 365 (1982).

Tribunal le debe deferencia al foro de instancia en el descargo de su función de apreciar la prueba que tuvo ante su consideración y en la adjudicación de su credibilidad.

Sin embargo, de manera excepcional este Tribunal puede intervenir con la apreciación de la prueba testifical y las determinaciones de hechos del juzgador de instancia, cuando este último haya actuado con pasión, prejuicio o parcialidad, o hubiese incurrido en error grave o manifiesto al aquilatar la prueba[61]. Sobre este particular, somos conscientes de que "[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal"[62]. En tales instancias, podemos apartarnos de los criterios de abstención judicial sobre la deferencia debida a los foros primarios, para instituir nuestra apreciación y juicio evaluativo de los asuntos de referencia.

### III.

En el caso de autos, la peticionaria arguyó que el TPI incidió al denegar la orden de protección solicitada, al no reconocer la existencia de un patrón de maltrato psicológico, intimidación y control coercitivo bajo la Ley Núm. 54, *supra*. Sostuvo que el tribunal evaluó la prueba de forma fragmentada, aplicó un estándar probatorio incorrecto y limitó su derecho a presentar evidencia al denegar la citación de testigos, lo cual afectó el debido proceso. Además, cuestionó la apreciación de la prueba, al no considerar adecuadamente su testimonio, el contexto de la relación, ni sus manifestaciones de temor. Esbozó que la decisión fue arbitraria y constituyó un abuso de discreción pese a la evidencia presentada.

Por su parte, el recurrido adujo que no procedía la expedición del auto solicitado debido a que la señora Capó Hernández no

---

[61] *Quiñones López v. Manzano Pozas*, 141 DPR 139, 152 (1996).
[62] *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978).

demostró arbitrariedad, abuso de discreción, error manifiesto ni violación al debido proceso por parte del foro recurrido. Sostuvo que la vista final se celebró conforme a derecho, que la peticionaria compareció representada por abogadas, declaró bajo juramento y tuvo oportunidad de presentar su caso. Expresó que la determinación recurrida descansó en la insuficiencia de prueba admisible, ya que la alegada amenaza principal provenía de declaraciones de un tercero ausente, por lo que el tribunal correctamente sostuvo objeciones por prueba de referencia y falta de conocimiento personal. Además, indicó que la orden de protección ex parte tenía carácter provisional y no obligaba al tribunal a conceder una orden final. Asimismo, enfatizó que el recurso solo reflejaba inconformidad con la apreciación de la prueba y pretendía obtener una segunda oportunidad probatoria, lo cual no justifica la intervención apelativa extraordinaria.

Examinado detenidamente el recurso presentado, los documentos que obran en autos y la determinación recurrida, este foro intermedio concluye que no se justifica nuestra intervención en esta etapa de los procedimientos. Como norma general, las determinaciones relacionadas con la apreciación de la prueba, la credibilidad de los testigos, la admisibilidad de la evidencia y la conducción de los procedimientos descansan dentro del amplio margen de discreción del TPI, foro que tuvo la oportunidad de observar directamente el comportamiento y la credibilidad de las partes durante las vistas celebradas.

Del expediente surge que el foro recurrido celebró tanto una vista ex parte como una vista evidenciaria final, escuchó el testimonio de la peticionaria, atendió los planteamientos formulados por las respectivas representaciones legales y evaluó la prueba presentada antes de concluir que no se probaron los elementos necesarios para la expedición de una orden de protección al amparo

de la Ley Núm. 54, *supra*. En particular, el TPI determinó que la prueba presentada no resultó suficiente para establecer la existencia de actos constitutivos de violencia doméstica conforme al estándar aplicable.

Si bien la señora Capó Hernández sostuvo que el foro recurrido limitó indebidamente su derecho a presentar prueba al declarar *No Ha Lugar* la solicitud de citación de determinados testigos, no surge del recurso una demostración clara de que el TPI haya actuado de manera arbitraria, irrazonable o en abuso de su discreción. Ello, particularmente, cuando el foro recurrido indicó que correspondía a las partes gestionar la comparecencia de sus testigos y se reservó su facultad de evaluar la pertinencia y admisibilidad de la prueba presentada durante la vista evidenciaria.

Asimismo, del propio recurso surge que una parte sustancial de las alegaciones medulares de la peticionaria descansaba sobre manifestaciones atribuidas a terceros, cuya admisibilidad fue objetada oportunamente como prueba de referencia durante la vista final. En ese contexto, no se desprende que las determinaciones evidenciarias realizadas por el TPI constituyan un error craso o manifiesto que amerite la intervención extraordinaria de este tribunal apelativo.

No cabe duda de que los argumentos argüidos por la señora Capó Hernández en su recurso de *Certiorari* reflejan una discrepancia con la realidad jurídica acontecida durante la vista evidenciaria. Fíjese que, el TPI realizó una adecuada valoración de la prueba y las conclusiones alcanzadas son conforme a derecho. Las meras alegaciones no constituyen prueba y ello, por sí solo, no basta para justificar la expedición del auto solicitado, particularmente ante la deferencia que merecen las determinaciones del juzgador de hechos en ausencia de pasión, prejuicio, parcialidad o abuso manifiesto de discreción.

En consecuencia, al no concurrir circunstancias que evidencien un fracaso de la justicia ni criterios que justifiquen nuestra intervención interlocutoria, este Foro deniega la expedición del recurso solicitado.

**IV.**

Por los fundamentos antes expuestos, ***denegamos*** el recurso de *certiorari* de epígrafe.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones